**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

| | |
|---|---|
| JAMES BLAIS, | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
|       **v.** | )      **Civil Action No. 11-10100-DJC** |
| | ) |
| BRIDGEWELL, INC., | ) |
| | ) |
|       **Defendant.** | ) |

_____)

**MEMORANDUM AND ORDER**

**CASPER, J.**                                             July 3, 2012

**I.    Introduction**

Plaintiff James Blais ("Blais") brings this action against Defendant Bridgewell, Inc. ("Bridgewell") alleging that Bridgewell discriminated and retaliated against him based on his military status in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301 *et seq.* ("USERRA") and Massachusetts law. Bridgewell has now moved for summary judgment. Blais has also moved for partial summary judgment as to one of his claims. For the reasons discussed below, both motions are DENIED.

**II.    Burden of Proof and Standard of Review**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the undisputed facts show that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56 (a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of showing the district court the basis for its motion and identifying where there

1

exists a lack of any genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323

(1986). A dispute is "genuine" only if a reasonable jury could find for the nonmoving party.

<u>Anderson</u>, 477 U.S. at 248. In his opposition, the nonmovant "must point to 'competent evidence'

and 'specific facts' to stave off summary judgment." <u>Tropigas de Puerto Rico, Inc. v. Certain</u>

<u>Underwriters at Lloyd's of London</u>, 637 F.3d 53, 56 (1st Cir. 2011) (internal citation omitted); <u>ATC</u>

<u>Realty, LLC v. Town of Kingston</u>, 303 F.3d 91, 94 (1st Cir. 2002). The Court "view[s] the record

in the light most favorable to the nonmovant, drawing reasonable inferences in his favor," <u>Noonan</u>

<u>v. Staples, Inc.</u>, 556 F.3d 20, 25 (1st Cir. 2009), but "afford[s] no evidentiary weight to 'conclusory

allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less

than significantly probative.'" <u>Tropigas de Puerto Rico, Inc.</u>, 637 F.3d at 56 (quoting <u>Rogan v. City</u>

<u>of Boston</u>, 267 F.3d 24, 27 (1st Cir. 2001)).

## III.    Factual Background

Unless otherwise indicated, the following are the undisputed facts.[1]

Bridgewell, a Massachusetts non-profit corporation which provides services to persons with

disabilities and life challenges, first employed Blais in July 2006 to manage its fleet of

approximately 130 vehicles. Am. Compl. ¶¶ 4, 6; Def. SOF Ex. A, Deposition of James Blais

---

[1]For the purposes of this Memorandum and Order, the parties' filings are abbreviated as follows: Amended complaint ("Am. Compl."); Bridgewell's memorandum of law in support of its motion for summary judgment ("Def. Mem."); Bridgewell's statement of undisputed material facts in support of its motion for summary judgment ("Def. SOF"); Blais' opposition to Bridgewell's motion for summary judgment ("Pl. Opp."); Blais' statement of undisputed material facts ("Pl. SOF"); Blais' memorandum of law in support of his motion for partial summary judgment ("Pl. Mem."); Blais' statement of undisputed material facts in support of his motion for partial summary judgment ("Pl. SOF II"); Bridgewell's memorandum of law in opposition to Blais' motion for partial summary judgment and reply memorandum in support of its motion for summary judgment ("Def. Reply"); and Bridgewell's response to Blais' statement of undisputed material facts ("Def. Resp. to Pl. SOF II").

("Blais Dep.") 65.  The fleet manager is responsible for negotiating lease and purchase arrangements for Bridgewell's vehicles and for vehicle operations.  Am. Compl. at ¶ 8; Answer at ¶ 8.  Bridgewell acknowledges that the overall management of the transportation system improved once Blais was hired as Fleet Manager.  Pl. SOF Ex. D, Deposition of Bridgewell President and Chief Executive Officer Robert Stearns ("Stearns Dep.") 9-10.

In February 2008, Blais left Bridgewell to briefly work for another company, but was soon asked to return.  Pl. SOF Ex. D, Stearns Dep. 11; Pl. SOF Ex. A, Blais Dep. 23-25.  Upon his return to Bridgewell, Blais' title became "Director of Fleet Services," but his duties remained the same as before his departure.  Am. Compl. at ¶ 11; Answer at ¶ 11; Def. SOF Ex. A, Blais Dep. 68-69.

On July 1, 2009, Kelly Johnson, Bridgewell's Chief Operating Officer and Blais' supervisor, met with Blais to discuss fleet operations as well as some of Blais' "challenges," including the "need [for Blais] to be reachable," her "continued concern with [Blais'] disrespect to others - especially P.D.'s [program directors], and his "need to step up as sr. manager, be helpful, [and] work cooperatively."  Pl. SOF Ex. R at D01742.  Blais testified that at the end of this meeting, he felt the issue had been resolved.  Pl. SOF Ex. A, Blais Dep. 88.

Later that month, on July 22, 2009, Johnson provided Blais with an annual performance evaluation.  Def. SOF Ex. B (7/22/2009 Performance Evaluation).  In all but three categories, Johnson rated him "competent."  Id.  Of the remaining three categories, Blais was given an "excellent" rating in two categories and a "needs improvement" rating for the performance factor of "follows instructions, responds to management direction."  Id.  The performance evaluation noted that Blais "needs to be more accepting of conversations between himself and his supervisor that focus on identifying a problem to then address with improved systems . . . There have been several

3

times when a problem is discovered that might cause us to look for ways to implement or improve checks and balances (i.e. tracking inspection sticker and registration expirations). Jim tends to be resistant at first to hearing that improvements may be in order and often this results in a lengthy back and forth ending with him saying he will do what his supervisor wants. There needs to be improved collaborative problem solving with reduced defensiveness." Id.

In the "competent" rating for "meets attendance standards," Johnson noted that she had "recently discussed [with Blais] the need for him to be more accessible as a senior manager. For example, if he starts his day earlier than usual and leaves a little early he needs to be reachable by cell phone." Id. Johnson rated Blais "competent" for "maintains a respectful attitude and tone at all times" and commented that Blais "continues to be conscious of his approach and response to others resulting in a more respectful and professional tone. We recently discussed that he is sometimes viewed as condescending and this is something he needs to remain aware of as he continues to work on his communication." Id.

In September 2009, Blais informed Johnson that he was interested in joining a National Guard or Reserve unit. Def. SOF ¶ 15; Pl. SOF Ex. A, Blais Dep. 104. At a meeting on September 16, 2009, when Blais told Johnson that he was joining the Air Guard, Blais claims she reacted negatively. Pl. SOF Ex. A, Blais Dep. 104-107. Days later, Johnson thanked him for his service, Pl. SOF Ex. A, Blais Dep. 113, and Blais was congratulated at a senior meeting. Def. SOF Ex. F, Deposition of Director of Human Resources Inge Peters ("Peters Dep.") 26-27.

Blais attended military training from March 17, 2010 through June 28, 2010. Def. SOF, Ex. F, Peters Dep. 36; Def. SOF Ex. C, Deposition of Kelly Johnson ("Johnson Dep.") 47; Def. SOF ¶ 18; Pl. SOF ¶ 15. When his military leave ended, Blais returned to Bridgewell with the same

benefits on June 28, 2010. Def. SOF Ex. A, Blais Dep. 134-35. After his return, no one at Bridgewell made any explicitly negative comments about Blais' enlistment or military leave. Id. at 173-74. Other than Johnson's comment in September 2009, Johnson did not demonstrate any other negative reaction or make any other negative comment about Blais' military service. Id. at 174.

On August 12, 2010, one of Bridgewell's vehicles was involved in an accident which sent a number of Bridgewell employees and clients to the hospital. Def. SOF Ex. G (8/20/2010 Corrective Action); Def. SOF Ex. C, Johnson Dep. 64. Johnson called Blais several times on his cell phone, but Blais did not return her phone calls until thirty-five minutes later. Def. SOF Ex. G; Def. SOF ¶ 21; Pl. SOF ¶ 20. Johnson was also troubled by Blais' lack of concern about the accident when she finally reached him. Def. SOF Ex. C, Johnson Dep. 64; Def. SOF Ex. A, Blais Dep. 139-40. On August 20, 2010, Johnson issued Blais a Corrective Action because she was unable to reach him. Def. SOF Ex. G. The Corrective Action noted that "[t]his is not the first time this issue has arisen" and required that Blais "remain available at all times during work hours even when in meetings, out of the office or on the road. The nature of the job requires constant availability." Id. The Corrective Action concluded, "Please be advised any future violation of this or any other policy, rule and/or guideline will result in disciplinary action up to and including termination." Id. Blais' written response to the Corrective Action stated that he had been at Greater Lynn Senior Services when Johnson called and did not check his cell phone until he was driving from that location. Def. SOF Ex. H at D00073-74. Blais also referenced Johnson's previous displeasure when he announced that he was enlisting in the Air National Guard and would be gone for months. In his words, "[Johnson] later said good luck but it contradicted her initial reaction."

Id. at D00074.  In Blais' opinion, he had "somehow fallen into a very 'Hostile Work Environment.'"

Id. at D00075.

In response to the Corrective Action and Blais' written response to it, Human Resources

Director Inge Peters met with Blais, and then with both Blais and Johnson.  Def. SOF Ex. F, Peters

Dep. 68-69, 80-81, 87-90; Def. SOF Ex. K (9/7/2010 email from Blais to Peters); Def. SOF ¶ 30,

31, 37.  Peters spoke to Johnson as part of her investigation of his claim of a hostile work

environment.  Def. SOF Ex. F, Peters Dep. 89-90.  After this investigation, Peters concluded that

she was "firm in believing that the issue is not one of hostile work environment, but rather the result

of mounting frustration based on differing opinions and perspectives in the carrying out of job duties

- heightened by a corrective action you did not agree should be given."  Def. SOF Ex. L (Peters'

email to Blais).[2]

On November 10, 2010, Johnson gave Blais his annual performance evaluation.  Def. SOF

Ex. M (11/10/2010 Blais' Performance Evaluation).  Blais received a "needs improvement" rating

in several work performance categories.  Blais received a needs improvement rating in the area of

"[d]elivers expected quality of work" and Johnson commented that "Jim at times provides me with

work that is incomplete and/or not of expected quality . . . ." Def. SOF Ex. M at D00016.  In giving

_____

[2] It is significant to note that Peters' meeting with Blais and Johnson took place after an
exchange between Stearns, Bridgewell's Chief Executive Officer, Blais and Johnson regarding a
meeting with representatives of Merchants, the company from which Bridgewell leases and
purchases all of its vehicles.  Def. SOF Ex. E, Stearns Dep. 107-108.  Prior to the meeting with
Merchants, Blais emailed Stearns about pricing information to which Stearns responded, "[T]his
is my meeting and not yours."  Def. SOF Ex. J (emails regarding Merchants meeting).  Stearns
also told Blais not to interject with his own agenda at the meeting.  Def. SOF Ex. F, Stearns Dep.
107; Def. SOF Ex. A, Blais Dep. 180-81.  Despite this direction, at the Merchants meeting on
August 24, 2010, Blais tried to present pricing issues and continued to discuss these issues with a
Merchants representative  after the meeting, upsetting both Stearns and Johnson.  Def. SOF Ex.
E, Stearns Dep. 107-109; Def. SOF Ex. A, Blais Dep. 181; Def. SOF Ex. J at D00244.

Blais a needs improvement rating in "[w]rites clearly and informatively," Johnson noted that "Jim had made some improvements previously but the quality of his emails has again declined. Jim needs to improve his tone and choice of wording to be less confrontational and threatening as evidenced in several emails reviewed." Id. at D00017. In "[g]ets along with others," Blais received a needs improvement rating and Johnson commented that "Jim needs to continue to work on all areas associated with teamwork to improve his relations with others - specifically program directors and supervisors with whom he works most closely. Jim often comes across as dictating and condescending rather than as part of a team working together. He often reminds staff that he is a senior manager and in doing so threatens to take some action using his power. He often does this in the beginning stage as the first step of resolving an issue. This is not a professional or acceptable way in which to accomplish things." Id. at D00018.

With respect to the area of "[m]aintains a respectful attitude and tone at all times," Johnson gave Blais a needs improvement rating and stated that he "continues to struggle at times with ensuring a respectful attitude and tone. Most recently this was noted during discussions with his supervisor focused on performance issues when he would te[e]ter on insubordination in his choice of words. I am not convinced that Jim fully understands that his communication is problematic at times with others as well. Jim's tone and demeanor with program directors, program supervisors and other managers is often received as condescending and threatening. This is an area that must be improved." Id. at D00018. In giving Blais a needs improvement rating in "[h]andles administrative requirements timely and completely," Johnson commented that "Jim continues to have difficulty ensuring completeness of work and attention to detail. Jim must continue to improve his attention to detail rather than being too quick to respond without being complete. It appears that

Jim is concerned with getting things off his desk as quickly as possible and quality suffers as a result." Id. at D00020.

The "Overall Comments" section of the review concluded that "[t]here is much room for Jim to work on improved relations with peers, program supervisors and program directors. Relationship building is important to ensuring success and with more attention to this area Jim will gain the respect he is looking for from staff." Id. The review further noted the Corrective Action issued over Blais's unavailability after the August 2010 accident and his forwarding of an "email directly to the CEO without first sending it to [Johnson] for review" in connection with the Merchants meeting. Id. at D00017.

In their meeting to discuss his performance review on November 10, 2010, Blais recalled telling Johnson that "at least 50% of the [Program Directors] were not performing their responsibilities pertaining to vehicles." Def. SOF Ex. A, Blais Dep. 197. Johnson recalled Blais stating that he had never worked for a company with as many people as did not do their jobs as at Bridgewell, about which the Company did nothing, and that the Company did not discipline them. Def. SOF Ex. O, Affidavit of Kelly Johnson ("Johnson Aff.") ¶ 4; Ex. P (11/11/2010 Johnson's Memorandum to File).

On December 2, 2010, Bridgewell terminated Blais' employment. Def. SOF Ex. Q (12/2/2010 Termination Letter). The termination letter stated that "[d]uring the past year and a half there have been considerable discussions relative to your job performance in the areas of approach, perspective and presentation. As an employer, we need to balance our review of an employee's performance not just on successes within their performance year, but also on key factors such as those mentioned above. During the delivery of your performance evaluation last month, you

conveyed a number of thoughts about Bridgewell as an agency and its employees that were not only troublesome to hear, but in relation to your leadership position, a perspective that does not indicate an employment relationship that should continue. We believe your expressed sentiments will continually inhibit your ability to make appropriate changes to your management style and are not in line with what is expected of a member of senior management within Bridgewell. As a result, we have decided that your employment with Bridgewell will end as of December 2, 2010." Ex. Q at D00005.

Prior to conducting Blais' performance evaluation, Johnson had drafted a Performance Improvement Plan ("PIP") for Blais (Def. SOF Ex. R (PIP)); Bridgewell, however, decided not to place Blais on the PIP (or inform Blais of same) because Johnson believed Blais' comments during his November 10, 2010 evaluation meeting were "so toxic that it was impossible to employ him in a managerial role any longer." Def. SOF Ex. O, Johnson Aff. ¶ 5; Pl. SOF ¶ 34; Def. SOF ¶ 50.

## IV. Procedural History

In the amended complaint, Blais alleges that Bridgewell discriminated and retaliated against him based on his military status in violation of sections 4311(a) and 4311(b) of USERRA (Counts I and II, respectively) and Mass. Gen. Laws c. 151B, §§ 4(1D) and 4(4) (Counts IV and V, respectively). (D. 14). The amended complaint further alleges that Blais was discharged within 180 days of his return from military leave without cause and without advance notice in violation of section § 4316(c) of USERRA (Count III). Bridgewell has now moved for summary judgment as to all counts (D. 22) and Blais has moved for partial summary judgment as to Count III only. (D. 27). The Court held a hearing on both motions and took the matter under advisement.

## V. Discussion

**A.      Counts I & IV:  Discrimination Claims Under USERRA and Massachusetts Law**

As to Counts I and IV, Blais alleges that his military status was a motivating factor in Bridgewell's treatment of him including his termination.  USERRA prohibits discrimination in employment against persons based upon military status.  38 U.S.C. § 4301.  Section 4311(a) provides, in pertinent part, that a member of "a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership." 38 U.S.C. § 4311(a).  Similarly, Mass. Gen. Laws c. 151B, § 4(1D) prohibits an employer from denying "initial employment, reemployment, retention in employment, promotion or any benefit of employment to a person who is a member of . . . service in a uniformed military service of the United States."

USERRA discrimination claims require a two-pronged burden-shifting analysis. Velázquez-García v. Horizon Lines of P.R., Inc., 473 F.3d 11, 17 (1st Cir. 2007).  Although the plaintiff bears the initial burden, he " need only show that military service was 'a motivating factor' unless 'the employer can prove that the [adverse employment] action *would* have been taken' regardless of the employee's military service."   Velázquez-García, 473 F.3d at 17 (emphasis in original) (quoting 38 U.S.C. § 4311(c)).   "The factual question of discriminatory motivation or intent may be proven by either direct or circumstantial evidence."  Sheehan v. Dep't of Navy, 240 F.3d 1009, 1014 (Fed. Cir. 2001).  Discriminatory motivation on the basis of military status may be reasonably inferred from a variety of factors, including "proximity in time between the employer's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of

certain employees compared to other employees with similar work records or offenses." Conners v. Billerica Police Dep't., 679 F. Supp. 2d 218, 226 (D. Mass. 2010) (quoting Sheehan, 240 F.3d at 1014).

Once the plaintiff meets his burden of showing his military status served as a motivating factor in the employer's adverse action, the burden then shifts to the employer to "'prove, by a preponderance of the evidence, that the action would have been taken despite the protected status.'" Velázquez-García, 473 F.3d at 17 (quoting Sheehan, 240 F.3d at 1014); 38 U.S.C. § 4311(c)(1). Thus, the employer cannot merely point to the reasons it was justified for taking adverse action against the employee; rather, the employer, must prove, that "it would have done so if the employee were not in the military." Velázquez-García, 473 F.3d at 20. "This two-pronged burden-shifting analysis is markedly different from the three-pronged burden-shifting analysis in Title VII cases." Id. at 17. In Title VII cases under the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) test, "the burden of persuasion . . . always remains with the employee" who must establish "a prima facie case of discriminatory animus" first, then "the employer only has the burden of producing 'some legitimate, nondiscriminatory reason for the employee's [termination]'" before "the burden shifts back to the employee to show that 'the employer's state reason for terminating him was in fact a pretext.'" Id. (citations omitted). "By contrast, under USERRA, the employee does not have the burden of demonstrating that the employer's stated reason is a pretext. Instead, the employer must show, by a preponderance of the evidence, that the stated reason was *not* a pretext; that is, that 'the action *would* have been taken in the absence of [the employee's military] service.'" Id. (quoting 38 U.S.C. § 4311(c)) (emphasis added in Velázquez).

> 1.     **Whether Military Service was a Motivating Factor in Blais' Termination**

With this standard in mind and taking the evidence in the light most favorable to Blais, Blais can meet his initial burden of showing that his military status was a motivating factor in Bridgewell's adverse employment decision to terminate him.  When Blais informed Johnson in September 2009 that he was planning to enlist in the military, she reacted angrily.  She did not want his military leave to inconvenience her and testified that she was surprised when she learned the time commitment to the military had expanded from "reserves, one weekend a month, two weeks a year" to "something very different" and that Blais had given her no "pre-warning" of his plans.  Pl. SOF Ex. B, Johnson Dep. 41. While Johnson's comments expressing initial frustration over Blais' decision to enlist, without more, may be insufficient to support an inference that Blais' members in the Air National Guard was a motivating factor in Bridgewell's decision to terminate his employment, see Rademacher v. HBE Corp., 645 F.3d 1005, 1011 (8th Cir. 2011) (finding supervisor's anger and initial frustration with plaintiff's enlistment in Air Force Reserves, alone, was insufficient to show plaintiff's military status was a motivating factor in his termination), Blais points to additional evidence in the record to support a reasonable inference that his military service was a motivating factor in Bridgewell's decision to terminate him.  First, Blais testified that when he returned from military leave in June 2010, his once close, friendly relationship with Johnson, his supervisor, ended, see Pl. SOF Ex. A, Blais Dep. 118-20, 123, 127, and Johnson repeatedly asked him if working at Bridgewell was what he wanted to do and whether he thought he was cut out for a management role, comments that she had made to him before his military leave.  Pl. SOF ¶ 23 Ex. A, Blais Dep. 166.  Second, on August 12, 2010, but before Johnson issued him a disciplinary notice concerning his lack of accessibility immediately following the vehicular accident, Johnson speculated about whether Blais would still be working at Bridgewell.  Pl. SOF Ex. E (8/16/2010

email from Johnson to Peters). In an email to Stearns, Johnson noted her hope that Stearns' "feeling that [Blais] is on his way out is true." Pl. SOF Ex. T (8/16/2010 email from Johnson to Stearns). Although such comments are not explicitly hostile towards the military, it is nonetheless relevant in determining whether a plaintiff's military service was a motivating factor in an employer's adverse action. See Sheehan, 240 F.3d at 1014 (noting that "discrimination is seldom open or notorious," that discriminatory motivation may be inferred from a number of factors and that in considering whether an employee has demonstrated that his protected status was a motivating factor in the employer's conduct, "all record evidence may be considered"). Third, after Blais' response to the Corrective Action against him in which he alleged he had been treated differently since he enlisted in the military, Stearns stated in an e-mail to Johnson, "the question is whether or not tomorrow is his last day." Pl. SOF Ex. D, Stearns Dep. 112; Pl. SOF ¶ 26. On September 2, 2010, in response to an email from Johnson in which she described to Stearns her meeting with Peters and Blais, Stearns said, "[I]t is time to show [Blais] the door." Pl. SOF Ex. H (9/2/2010 email from Stearns to Johnson, copying Peters).

Moreover, while Bridgewell argues that the timing of his termination fails to support Blais' claim that his military status was a motivating factor in Bridgewell's decision because nearly five months passed between Blais' return from military leave on June 28, 2010 and his termination on December 2, 2010, Def. Mem. at 5, the record shows management's discussions concerning Blais' potential termination (in August and September 2010) occurred less than two months after Blais returned from military leave, long before Blais allegedly made comments in his November 2010 performance evaluation meeting that Bridgewell claims was the trigger for his termination. The First Circuit has noted that proximity in time is "not an exclusive test" and the Court should not,

therefore, "limit [itself] to looking only at the proximity of the adverse employment action to military activity." Velázquez-García, 473 F.3d at 19. Velázquez-García is instructive here. There, the plaintiff's employer had known about plaintiff's side business cashing checks for employees months before it ultimately terminated his employment. Id. The plaintiff claimed that his employer waited until it had recouped from him the money he owed for the periods when his civilian salary was supplemented by his military salary and that once he had repaid the overage, his employer found the pretext to fire him. Id. The First Circuit found that if true, such facts could be considered evidence of discriminatory animus and that his employer "should not escape liability for making the tactical decision to wait until it recouped the salary it was owed before using a pretext to fire [the plaintiff]." Id. at 20-21 (reversing district court's grant of summary judgment for the defendant on USERRA claim).

In this case, the record contains communications between Bridgewell management concerning the timing of Blais' termination as early as August and September 2010. After Stearns emailed Johnson on September 2, 2010, stating that it was "time to show [Blais] the door," Pl. SOF Ex. H, Johnson responded, "I do believe there is a risk of him trying to sue us . . . It's amazing how his mind works and how disrespectful and unaware of authority he is especially having served in the military." Pl. SOF Ex. I. When asked during her deposition if terminating Blais' employment within days of his complaint that he had been treated differently due to his military status was a delicate time to consider firing, Peters testified that it was such a time and allegedly told Stearns that it "was not a good idea to fire [Blais] at [that] time" and recommended the company not fire him. Pl. SOF Ex. D, Stearns Dep. 116-17. The record further shows that while Bridgewell did not terminate Blais' employment in August or September 2010, it began collecting documentation to

do so.  Pl. SOF Ex. D, Stearns Dep. 127; Ex. C, Peters Dep. 86; Ex. B, Johnson Dep. 105.  Peters testified that she wanted to ensure the company's compliance with USERRA and that if Bridgewell were to terminate Blais, it needed sufficient documentation in the event he sued Bridgewell.  Pl. SOF Ex. C, Peters Dep. 86.  Peters further testified that she had discussed collecting documentation with Johnson concerning the time line of issues with Blais despite Johnson and Stearns never stating he should be fired for those issues.  Id. at 86-87.  Drawing all reasonable inferences in Blais' favor, a jury could reasonably interpret the evidence to suggest that Blais' military service was a motivating factor and that the timing of his termination was to avoid the appearance that it was such a factor.

### 2. Whether Bridgewell Would Have Terminated Blais in the Absence of His Military Service

Because Blais has put forward sufficient evidence from which a reasonable jury could conclude that his military service was a motivating factor in Bridgewell's decision to terminate him, Bridgewell must prove, by a preponderance of the evidence, that it would have terminated Blais even if he was not a military service member.

Prior to his conversation with Johnson in September 2009 informing her of his plans to join the military and Blais' military leave in March 2010, Johnson and Blais had discussed the need for Blais to be more accessible, cooperative and respectful towards others.  Pl. SOF, Ex. R at D01742 (Johnson's notes from July 1, 2009 meeting), issues Blais thought had been resolved at the conclusion of their meeting.  Pl. SOF Ex. A, Blais Dep. 88.  A reasonable jury could find that Blais' perception was consistent with Johnson's comments in Blais' July 22, 2009 annual performance evaluation in which Johnson rated him competent in all but three categories, giving him an "excellent" rating in two categories and a "needs improvement" rating in only one category.  Def.

SOF, Ex. B. Peters testified that an evaluation such as this would not lead to an employee's termination for cause. Pl. SOF Ex. C, Peters Dep. 25. Before Blais went on military leave in March 2010, Bridgewell's senior management had never discussed terminating Blais' employment based on these or any other issues, had never disciplined or any warnings about his conduct or job performance. Pl. SOF Ex. C, Peters Dep. 37-38; Pl. SOF Ex. B, Johnson Dep. 47. Such facts, if true, could lead a reasonably jury to find that when Blais went on military leave in March 2010, Bridgewell had no intention of firing him with respect to issues concerning his accessibility, cooperation and respect towards other employees.

The formal disciplinary notice Johnson issued Blais on August 20, 2010 regarding his lack of accessibility cited violations of company policy as grounds for the disciplinary action. Def. SOF Ex. G. The record shows that Johnson had never before as the Chief Operating Officer issued such a notice to a manager, Pl. SOF Ex. B, Johnson Dep. 50, and that neither Stearns nor Peters could recall any other manager who had ever been given a written disciplinary notice for any offense. Pl. SOF Ex. D, Stearns Dep. 88; Pl. SOF Ex. C, Peters Dep. 43. Peters further testified that she could not identify the language in company policy that Blais had violated for not immediately returning Johnson's phone calls on the day of the accident, Pl. SOF Ex. C, Peters Dep. 61-63, 65, and Stearns testified that he was not concerned with Blais' failure to call Johnson on that day. Pl. SOF, Stearns Dep. 83.

As grounds for terminating Blais' employment, Bridgewell states in its termination letter that there had been considerable discussions concerning Blais' job performance over the past year and a half "in the areas of approach, perspective and presentation," Def. SOF Ex. Q, and that Blais' comments during his November 10, 2010 performance evaluation meeting regarding the company

and its employees in relation to his leadership position was "a perspective that does not indicate an employment relationship that should continue." Id. However, Stearns testified that Blais was not fired because he did not report to the scene of the August 12, 2010 accident, his behavior in connection with the Merchants meeting, his inappropriate email communications, or his November 10, 2010 performance evaluation. Pl. SOF Ex. D, Stearns Dep. 126-27, 131. Stearns also testified that Blais was terminated because of a "buildup of many issues over . . . an extended period of time" and cited issues such as "the way [Blais] treated other people, not accepting responsibility for anything that was discussed with him or review with him . . . not really being responsive to the needs of individuals . . . they transported, his drivers, the issues that came up in supervision with Kelly . . . His attitude, terrible attitude, poor relationships with his co-workers . . . ." Def. Resp. to Pl. SOF II Ex. 1, Stearns Dep. 150-52. Notwithstanding Stearns' testimony, Bridgewell does not dispute that prior to discussing Blais' November 2010 performance evaluation with him, the company had decided to place him on a performance improvement plan as a formal warning that if his performance failed to improve he could be fired instead of terminating him. Def. SOF Exs. O & R. Johnson never presented this plan to Blais. According to Johnson, at her meeting with Blais to discuss his evaluation, he made several statements critical of Bridgewell managers and employees, as she described in a November 11, 2010 memorandum. Def. SOF Ex. P. Johnson found his statements "so toxic that it was impossible to employ him in a managerial role any longer." Def. SOF ¶ 50, Ex. O.

On this record, it is up to the jury, not the judge, to weigh all of the evidence and determine the credibility of Bridgewell's witnesses in detailing the reasons for Blais' termination. See Anderson, 477 U.S. at 255 (noting that "[c]redibility determinations, the weighing of the evidence,

and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). Here, a reasonable jury could conclude that Blais was not terminated for anything prior to and including his November 2010 evaluation and that the only remaining explanation was Blais' comments during his his last evaluation meeting with Johnson and/or his military status. In light of the record and the series of events since July 2009 including Johnson's treatment of Blais allegedly changing once he returned from military leave, it cannot be said that Bridgewell has established that it would have fired Blais even if he were not in the military. The Court cannot say that there is no disputed issue of material fact and that Bridgewell is entitled to judgment as a matter of law. Accordingly, the Court DENIES Bridgewell's motion for summary judgment as to Counts I and IV.

**B.    Counts II & V:  Retaliation Claims Under USERRA and Massachusetts law**

Count II alleges that Bridgewell retaliated against Blais as a result of his complaint that he was being subjected to a hostile workplace because of his military status in violation of 38 U.S.C. § 4311(b).

USERRA makes it unlawful for an employer to "discriminate in employment against or take any adverse employment action against any person because such person . . . has taken an action to enforce a protection afforded" under USERRA. 38 U.S.C. § 4311(b). An employer's action against an employee is prohibited if the employee's effort to enforce a protection under the Act "is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of [the] enforcement action . . . statement . . . or exercise of a right." 38 U.S.C. § 4311(c)(2). Similarly, pursuant to Mass. Gen. Laws c. 151B, § 4(4), it is unlawful for an employer to "discharge, expel or otherwise discriminate against any person because he has opposed

any practices forbidden under this chapter or because he has filed a complaint . . . ." Id., § 4(4).  To prove his claim, Blais must show that his action was a substantial or motivating factor in Bridgewell's decision to terminate him.  38 U.S.C. § 4311(c)(2); see Velázquez-García, 473 F.3d at 19 (construing same language in § 4311(c)(1)).  If Blais makes this showing, Bridgewell must prove, by a preponderance of the evidence, that he would have been terminated despite his protected activity.

Blais puts forward sufficient evidence from which a reasonable jury could conclude that his USERRA complaint was a motivating or substantial factor in Bridgewell's decision to terminate him.  Five days after Blais complained of differential treatment based on his military status on August 20, 2010 (in his written response to the disciplinary action), Stearns emailed Johnson stating, "the question is whether or not tomorrow is [Blais'] last day."  Pl. SOF Ex. D, Stearns Dep. 112  After Stearns emailed Johnson on September 2, 2010, stating that it was "time to show [Blais] the door," Pl. SOF Ex H, Johnson responded, "I do believe there is a risk of him trying to sue us."  Pl. SOF Ex. I.  Peters allegedly told Stearns that it "was not a good idea to fire him at this time" and recommended the company not fire him.  Pl. SOF Ex. D, Stearns Dep. 116-18.  Viewed in the light most favorable to Blais, a reasonable jury could conclude that management discussed terminating Blais but did not do so for fear of a potential lawsuit and that while Bridgewell did not terminate Blais' employment in August or September 2010, it began collecting documentation to do so.  Pl. SOF Ex. D, Stearns Dep. 127; Ex. C, Peters Dep. 86; Ex. B, Johnson Dep. 105, 107.  Peters testified that she spoke to Johnson about gathering documentation to lay out a time line of the issues she had with Blais despite the fact that Johnson and Stearns never stated he should be fired for those issues.  Id. at 86-87.  From September through December 2010, management exchanged a series of emails

commenting on Blais, which Johnson described as venting her frustration about him, Pl. SOF ¶ 29, but did not terminate his employment until December 2, 2010. Drawing all reasonable inferences in Blais' favor, after weighing the evidence a jury could find that Bridgewell terminated Blais' employment because he complained of a USERRA violation and that the final decision to terminate his employment on December 2, 2010 was delayed only to avoid liability under the retaliation provision under USERRA.

Bridgewell has put forth some evidence that it terminated Blais for legitimate reasons and that it would have done so in the absence of his complaint of differential treatment based on his military status. However, taken in the light most favorable to Blais, such evidence is insufficient to warrant summary judgment as discussed more fully above. Blais points to a number of issues that Bridgewell argues purportedly led to his termination - i.e., Blais' behavior in relation to the Merchants meeting, inappropriate emails, his failing to immediately call Johnson back at the time of the August 12, 2010 accident, his November 2010 evaluation - but which Stearns testified were not reasons for his termination. Johnson's preparation of the improvement plan for Blais, rather than terminating his employment due to his November 2010 evaluation, further suggests that nothing before or including the November 2010 evaluation was the cause for Blais' termination. This evidence is sufficient to raise a genuine dispute of material fact as to whether Bridgewell terminated him because he complained of differential treatment based on his military status. Accordingly, Bridgewell is not entitled to summary judgment as to Count II.

Because the parties agree that the Chapter 151B claims (Counts IV (discrimination) & V (retaliation)) should be interpreted in the same manner as the USERRA claims alleged in Counts I and II, see Def. Mem. at 10-11; Pl. Mem. at 20, and the Court does so here, Bridgewell's motion for

summary judgment as to Counts IV and V is also DENIED.

### C. Count III: Bridgewell's Motion for Summary Judgment and Blais' Cross-Motion for Partial Summary Judgment as to the 38 U.S.C. § 4316(c) claim

Count III alleges that Bridgewell violated section 4316(c) of USERRA because Bridgewell lacked cause to terminate his employment and provided him no advance notice that his conduct would constitute cause for discharge.  Section 4316(c) of USSERA provides that "[a] person who is reemployed by an employer . . . shall not be discharged from such employment, except for cause – . . . within 180 days after the date of such reemployment, if the person's period of service before the reemployment was more than 30 days but less than 181 days."  38 U.S.C. § 4316(c).  "The employee may be discharged for cause based either on conduct or, in some circumstances, because of the application of other legitimate nondiscriminatory reasons."  20 C.F.R. § 1002.248.  Where, as here, the discharge action is based on conduct, "the employer bears the burden of proving that it is reasonable to discharge the employee in question, and that he or she had notice, which was express or can be fairly implied, that the conduct would constitute cause for discharge."  Id.  While Bridgewell moves for summary judgment on Count III in its entirety, Blais moves for partial summary judgment on the issue of notice only.  Pl. Mem. at 3.

"Although summary judgment is rare in USERRA termination cases because the burden of proving cause is on the defendant, it is appropriately granted when an employer's decision to terminate an employee is reasonable as a matter of law."  To v. United States Bancorp, 651 F.3d 888, 892 (8th Cir. 2011) (citing cases).  The question is whether "based on the undisputed evidence in the record, it was objectively reasonable" for the employer to dismiss the plaintiff.  Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006).  Given the disputed record and the reasonable conclusions a jury could draw therefrom, as discussed above, the Court cannot

conclude that this is one of those rare cases where the employer's decision to terminate Blais was reasonable as a matter of law such that Bridgewell is entitled to summary judgment.

In addition, there is a genuine dispute of material fact as to if and when Blais had notice that his conduct – either past performance or disparaging comments at the November 10, 2010 performance review meeting with Johnson – would constitute cause for discharge. Although Stearns further testified that Blais should have been aware since at least August 2010 that his employment was in jeopardy, Def. Resp. to Pl. SOF II Ex. 1, Stearns Dep. 153, as previously noted, Stearns also testified that Blais was not terminated as a result of his conduct concerning the Merchants meeting or the accident in August 2010. The undisputed evidence indicates that Johnson maintained detailed notes of all her bi-monthly supervisory meetings with Blais, Pl. SOF Ex. R, and that other than her July 1, 2009 meeting notes, her notes after that date (and before the last November evaluation meeting) show no discussion of any issue with Blais concerning his attitude towards and interactions with other employees. Pl. SOF II ¶ 19; Def. Resp. to Pl. SOF II ¶ 19. As discussed above, Bridgewell had decided not to terminate Blais based on his November 10, 2010 evaluation and that instead of firing him, the company decided to place him on an improvement plan and that the plan would have given Blais three months to improve his performance and conduct.

Bridgewell does not dispute that notice could have been provided if Bridgewell complied with its progressive discipline policy which commences with a verbal warning, followed by a written warning, a final written warning, suspension and, finally, termination. Pl. SOF II ¶ 17; Def. Resp. to Pl. SOF II ¶ 17. Nor does Bridgewell dispute that it is company policy to use this procedure, which it failed to do here where it proposed a performance improvement plan but did not implement it and instead terminate his employment. Id. Based on this record, a reasonable jury could conclude

that notice was not express or fairly implied that Blais' performance up to November 10, 2010 would result in his termination.

Similarly, a genuine dispute of material fact also exists as to whether Blais was aware that his remarks at the November 10, 2010 performance evaluation meeting, alone or in conjunction with his past performance issues, could lead to termination. At that meeting, according to Johnson, Blais made several statements critical of Bridgewell managers and she found the statements "so toxic that it was impossible to employ him in a managerial role any longer." Pl. SOF II ¶ 9; Def. Resp. to Pl. SOF II ¶ 9. Blais' statements during his meeting with Johnson triggered the decision to terminate his employment. Pl. SOF II ¶ 12; Def. Resp. to Pl. SOF II ¶ 12. Whether Blais had sufficient notice that such comments could lead in whole or in part to his termination and whether that constituted cause for his termination is ultimately a question for the jury.

Therefore, neither party is entitled to summary judgment on Count III.

## VI.     Conclusion

For the foregoing reasons, Bridgewell's motion for summary judgment is DENIED and Blais' partial motion for summary judgment as to Count III is also DENIED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge